17 F.3d 394
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Noyes Russell HOWARD, Petitioner-Appellant,
v.
James BLODGETT, Superintendent, Washington State
Penitentiary, Respondent-Appellee.
 No. 92-36993.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 7, 1993.
Decided Dec. 10, 1993.
 
 Before: GOODWIN, SCHROEDER, and PREGERSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 This is an appeal from the dismissal of a petition for habeas corpus. The petitioner, Noyes Russell Howard, was convicted of first degree murder in the death of his wife in 1975, and he is currently serving a life sentence in the state of Washington.
 
 
 3
 The petitioner's contentions center around the fact that he was not charged with the murder until approximately ten years after the death, and the trial did not commence until approximately 12 years after the death. His principal contention on appeal is that the district court erred in holding that the delay between the death and his trial violated his right to due process.
 
 
 4
 The facts are contained in detail in the opinion of the Washington Court of Appeals in State v. Howard, 756 P.2d 1324, 1325-26 (Wash.Ct.App.1988), review denied, 112 Wash.2d 1010 (1989). On January 10, 1975, petitioner found the body of his wife, Donna Howard, near a shed behind their home and notified police. The police took black and white photographs of the scene. The county coroner who conducted the autopsy and the detective who investigated the crime concluded that the death had been accidental. A few days after the death, it was declared accidental and the case closed. The case was reopened and reclosed twice during the next year and a half. Both reopenings were at the insistence of members of Donna Howard's family.
 
 
 5
 Approximately four years later, in June of 1980, the petitioner's estranged second wife informed the police that the defendant had told her he had killed Donna with a claw hammer. By the time that the police learned of information about the confession, nearly all of the physical evidence that had played a role in the earlier decisions that the death was accidental had been lost. The photographs remained. Thinking that the confession had been made during the course of the marriage, police filed no charges at that time.
 
 
 6
 Finally, in 1984, at the continued insistence of the victim's family, the state charged Howard with first degree murder. After a delay of approximately two years to determine whether the state or the county was responsible for the costs of the defense, a trial began on October 21, 1986.
 
 
 7
 The principal argument on appeal is that the delay between the crime and the trial violated Howard's Fourteenth and Fifth Amendment right to due process. See Doggett v. United States, 112 S.Ct. 2686, 2692 n. 2 (1992). To establish a successful due process claim for delay, the petitioner must demonstrate actual prejudice from the delay and then persuade the court that the resulting prejudice outweighs the government's reasons for the delay. See United States v. Lavasco, 431 U.S. 783, 790 (1977); United States v. Moran, 759 F.2d 777, 780-82 (9th Cir.1985), cert. denied, 474 U.S. 1102 (1986). Petitioner correctly points out that in this circuit, government bad faith--or specific intent to gain an advantage over a defendant by delay--is not required to establish a violation of due process. Negligence in bringing the charges can, theoretically at least, result in a denial of due process. But, as we stated in Moran, if the reason for the delay is "mere" negligence, the "delay and/or prejudice suffered by the defendant will have to be greater than that in cases where recklessness or intentional governmental conduct is alleged." Moran, 759 F.2d at 782.
 
 
 8
 Petitioner does not contend that the state at any time deliberately sought to delay the institution of charges in order to obtain an advantage over him. His position rests on the prejudice he has suffered from the loss of physical evidence that he claims would have played a crucial exculpatory role in the trial. Yet, even assuming that he is correct in this assertion, he cannot fault the state for any of the delay that occurred between 1975 to 1980; it was not until his second wife, Pepper, stepped forward that the state had sufficient cause to believe that the petitioner committed the crime. The government's failure to charge because of lack of probable cause cannot contribute to a denial of due process. It is well settled that "prosecutors do not deviate from 'fundamental conceptions of justice' when they defer seeking indictments until they have probable cause to believe an accused is guilty; indeed it is unprofessional conduct for a prosecutor to recommend an indictment on less than probable cause." Lavasco, 431 U.S. at 790-91. It was during this early period, before Pepper's statement, that most of the crucial evidence was lost. We are thus left, at most, with a six-year delay between the existence of probable cause and trial, during which the government was at most moderately negligent. Little prejudice occurred beyond the usual dimming of memories during that time. On the principles enunciated in Lavasco and Moran, appellant cannot succeed on his claim of denial of due process.
 
 
 9
 The claim of denial of a speedy trial pursuant to the Sixth Amendment, which is measured from the time elapsed between the charge and the trial, United States v. Marion, 404 U.S. 307, 320 (1971); see Doggett, 112 S.Ct. at 2690-91, also must fail. That delay did not materially prejudice the defendant and it is fully explainable by the litigation over the potential costs of trial. An interlocutory appeal brought by the state ordinarily is a valid reason for delay. United States v. Loudhawk, 474 U.S. 302, 315 (1986).
 
 
 10
 The petitioner also raises a claim of denial of due process through the state's failure to preserve evidence. The Supreme Court held in Arizona v. Youngblood, 488 U.S. 51, 58 (1988), that the state's failure to preserve evidence does not constitute denial of due process unless the defendant can show bad faith on the part of the police. There is none here. As noted above, at the time the evidence was lost, the state did not have a sufficient basis on which to charge petitioner with a crime.
 
 
 11
 Finally, the petitioner contends that the prosecution improperly referred to missing evidence in its attempt to persuade the jury that petitioner's experts were not to be believed and there was nothing to support the conclusion that the death was accidental. Petitioner, however, did not object to the prosecutor's comments. In the absence of such an objection, the remarks tending to shift the burden of proof in the jurors' minds cannot violate due process unless it can be shown that they were of a character to "undermine fundamental fairness." Mitchell v. Goldsmith, 878 F.2d 319, 324 (9th Cir.1989). During trial both parties attempted to use the absence of the evidence as support for their arguments.
 
 
 12
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3